## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIDGET POWELL,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA, ET AL.,** | : | |
| *Defendants*. | : | **NO.  24-cv-817** |

### <u>MEMORANDUM</u>

**KENNEY, J.**                                                          **January 22, 2025**

In her Amended Complaint, Plaintiff Bridget Powell asserts ten counts against thirteen named defendants.[1]  *See* ECF No. 26 ("Am. Compl.") at ¶¶ 30–76.  Specifically, Plaintiff's Amended Complaint presents constitutional claims under 42 U.S.C. § 1983, alleging violations of her rights to familial association, due process, and equal protection (Claims 1–3) against all Defendants;[2] a claim under 42 U.S.C. § 1985 for conspiracy (Claim 4) against all Defendants; a *Monell* claim for alleged unconstitutional policies and customs within the child welfare system against the City of Philadelphia, Turning Points for Children, and the Defender Association of Philadelphia (Claim 5); claims under state tort law for invasion of privacy against Defendants Nikkia Plunkett, Kennisha White, Ceolia Warren Bentley, and Emily Blumenstein (Claim 6); and negligence and negligent infliction of emotional distress, defamation, fraud, and abuse of process (Claims 7–10) against all Defendants.  *Id.*

---

[1] At this juncture, the action is stayed as to Defendants Turning Points for Children, Jennifer Kaba, Cydney Dasent, Kennisha White, Juanita Parks, and Nikkia Plunkett.  *See* ECF No. 46.  The Defender Association of Philadelphia has not appeared in this action.

[2] For clarity, Plaintiff alleges these constitutional violations as to all Defendants.  However, Plaintiff's specific "Judicial Deception" claim under 42 U.S.C. § 1983 (Claim 2) is only as to Defendants Nikkia Plunkett, Kennisha White, Juanita Parks, Jennifer Kaba, Cydney Dasent, and Emily Blumenstein.  Out of these Defendants, only Blumenstein is a moving defendant.

Several defendants—namely, the City of Philadelphia, Kimberly Ali, Cynthia Figueroa, Sannah Crawford, and Emily Blumenstein (the "Moving Defendants")—now seek dismissal of all claims against them. Defendant Blumenstein further seeks dismissal under Rule 12(b)(5) for insufficient service of process. For the reasons discussed below, the Court will grant the Moving Defendants' Motions to Dismiss (ECF Nos. 28, 34, 35) with prejudice. The Court will further dismiss all claims against Ceolia Warren Bentley and the Defender Association of Philadelphia with prejudice.

## I.    **BACKGROUND**

Plaintiff Bridget Powell is "the maternal aunt of Nasair Powell and [Plaintiff's niece], N.J." Am. Compl. ¶ 5. Plaintiff alleges that she has a longstanding familial bond with both Nasair and N.J., and has pursued custodial placement of the children for several years. *Id.* ¶¶ 5, 17, 21, 25. Plaintiff claims that she has demonstrated her capacity to care for her niece by obtaining foster care licensure and successfully caring for other foster children. *Id.* ¶ 17. However, she contends that Defendants have repeatedly thwarted her efforts to gain custody, disregarding her familial relationship and fostering qualifications. *Id.* ¶¶ 15, 25. This course of conduct, Plaintiff alleges, resulted in the denial of Plaintiff's adoption petition for her nephew and placement of N.J. outside of Plaintiff's care. *Id.* ¶¶ 27, 75(a).

Plaintiff alleges that, beginning in 2016, she "became aware of issues regarding the placement and care of" her nephew and niece. *Id.* ¶ 13. These issues included alleged false statements made during court proceedings and related meetings regarding Ceolia Warren Bentley's[3] familial relationship with Plaintiff's niece and nephew, and Plaintiff's previous

---

[3] Plaintiff identifies Ceolia Warren Bentley as a "foster parent and respite provider" and names her as a Defendant in this action. *See* Am. Compl. ¶ 10.

treatment of her nephew.  *Id.* ¶¶ 10, 13–14.  From this point forward, Plaintiff alleges that "Defendants consistently failed" to keep Nasair and N.J. together, "or to consider placing them with [Plaintiff], a qualified family member capable of caring for both children."  *Id.* ¶ 25. According to Plaintiff, this failure resulted in significant harm to Plaintiff in the form of "time off work and financial losses," "medical issues," and "damage to my family associations caused by separation."  *Id.* ¶ 22.  Plaintiff alleges that she made "numerous attempts to address" her grievances with "Defendants Cynthia Figueroa, Kimberly Ali, and Turning Points supervisors," as well as with Defendant Emily Blumenstein and the Defender Association of Philadelphia, "before resorting to this legal action."  *Id.* ¶¶ 24, 29.

Plaintiff initiated this action on February 23, 2024, by filing a Complaint against Defendants.  *See* ECF No. 1.  On May 6, 2024, Defendant the City of Philadelphia filed a Motion to Dismiss for Failure to State a Claim.  *See* ECF No. 18.  On May 24, 2024, Plaintiff filed both a response to the Motion and a Motion for Leave to Amend the Complaint.  *See* ECF Nos. 19–20. This Court granted Plaintiff's Motion to Amend, ECF No. 24, and Plaintiff filed her Amended Complaint on July 15, 2024.  *See* ECF No. 26.  The Moving Defendants now request dismissal of Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), and, as to Emily Blumenstein, Federal Rule of Civil Procedure 12(b)(5).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations contained in the complaint."  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that

is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

"[A] complaint need not establish a prima facie case in order to survive a motion to dismiss." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). Instead, plaintiffs "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element," *Fowler*, 578 F.3d at 213 (internal quotation marks omitted), and must "give the defendant fair notice of what the [plaintiff's] claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.    **DISCUSSION**

The Moving Defendants now move to dismiss Plaintiff's Amended Complaint in its entirety as to the claims against them. Generally, Plaintiff's claims against the Moving Defendants fall into three categories: (1) Constitutional Claims (including the *Monell*[4] claim), (2) the Conspiracy Claim, and (3) State Tort Law Claims. The Court will address each category of claims

---

[4] Plaintiff's Amended Complaint refers to "Monell-related" claims. *See* Am. Compl. at 12. The Court construes this reference as being to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

in turn.  For the reasons set forth below, the Court will dismiss Plaintiff's Amended Complaint as to the Moving Defendants with prejudice.  In addition, the Court will further dismiss the claims against Ceolia Warren Bentley and the Defender Association of Philadelphia.[5]

### A.  42 U.S.C. § 1983 and *Monell* Claims (Claims 1–3, 5)

Plaintiff alleges in her Amended Complaint that the Moving Defendants each violated her federal constitutional rights, including the rights to familial association under the First and Fourteenth Amendments; the right to due process under the Fourteenth Amendment; procedural and substantive due process under the Fourteenth Amendment; and equal protection under the Fourteenth Amendment and are therefore liable under 42 U.S.C. § 1983 ("§ 1983").  Am. Compl. ¶¶ 30–38, 43–47.  Plaintiff further alleges that Defendant Emily Blumenstein, along with other non-moving Defendants, is liable under § 1983 for "Judicial Deception."  *Id.*  ¶¶ 39–42.

Plaintiff similarly alleges a *Monell* claim against Defendant City of Philadelphia and non-moving Defendants Turning Points for Children and the Defender Association of Philadelphia, asserting that, "through their policymakers, including Defendants Cynthia Figueroa, Kimberly Ali, and Emily Blumenstein," these Defendants established policies and procedures violative of Plaintiff's constitutional rights and are therefore liable under § 1983.  *Id.* ¶¶ 51–58.

The Court finds that Plaintiff fails to allege any policies or procedures set forth by the City of Philadelphia, or any failure to train or supervise, that resulted in a violation of Plaintiff's constitutional rights.  Similarly, the Court finds that the § 1983 claims against Ali, Figueroa, and Crawford cannot proceed, as each are immune from suit by virtue of their positions as DHS child

---

[5] "[I]t is well settled that even if a party does not make a formal motion to dismiss, the Court may on its own initiative dismiss the complaint for failure to state a claim upon which relief can be granted...where the inadequacy of the complaint is apparent as a matter of law."  *Zaslow v. Coleman*, 103 F. Supp. 3d 657, 664 (E.D. Pa. 2015).

welfare workers.  Finally, Blumenstein is not an individual acting under state law and, therefore, cannot be held liable for constitutional violations under § 1983.

Under § 1983, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." To adequately plead a § 1983 claim, a plaintiff must demonstrate that: "(1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States." *Simonton v. Tennis*, 437 F. App'x. 60, 61–62 (3d Cir. 2011) (citing *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (en banc)).  "Action under color of state law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Tp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011) (internal quotation marks omitted).

### 1.    City of Philadelphia

Claims 1–3 and 5 of the Complaint are dismissed as to Defendant the City of Philadelphia. The City of Philadelphia cannot be held liable under a theory of *respondeat superior*, and Plaintiff fails to allege a practice, policy, or custom, or failure to train or supervise, necessary for municipal liability under *Monell*.

Defendant the City of Philadelphia argues that it cannot be held liable under a theory of *respondeat superior* for the conduct of its employees, and instead "may be held liable if the employee acted pursuant to a government policy or custom" under *Monell*.  *See* ECF No. 28 at 5. The Court agrees.  Local governments may be liable as "persons" under § 1983, but this liability

extends only to "their **own** illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (emphasis in original) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). It is axiomatic of § 1983 jurisprudence that municipalities "are not vicariously liable under § 1983 for their employees' actions." *Id.* at 60; *Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (emphasis removed)).

In her Amended Complaint, Plaintiff refers to individual Defendants acting as "agents or contractors of the City of Philadelphia" or "acting on behalf of the City of Philadelphia." *See* Am. Comp. ¶¶ 8, 10. However, Plaintiff's assertion that the actions of a contractor or employee are attributable to the City of Philadelphia falls squarely within a theory of *respondeat superior* and therefore cannot provide a basis for municipal liability under § 1983.

As the City of Philadelphia recognizes, the analysis does not stop here. Plaintiff further alleges that the City of Philadelphia is liable under a *Monell* theory of liability. *See* Am. Compl. ¶¶ 51–58. To plead a plausible basis for municipal liability, a plaintiff must allege that the municipal entity's policy or custom caused the violation of her constitutional rights. *See Monell*, 436 U.S. at 694. Indeed, "[t]o satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation marks omitted) (alteration in original).

"Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (internal quotation marks omitted).  To establish that a custom, rather than a policy, was the proximate cause of an injury, the plaintiff must demonstrate that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (cleaned up).

Importantly, a plaintiff cannot plead a plausible § 1983 claim with vague and generalized allegations that merely paraphrase the standard for municipal liability.  *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).

In support of her *Monell* claim, Plaintiff alleges that Defendant City of Philadelphia had the following "policies, practices, and customs," both affirmative and under a failure to train theory: "Failing to properly train and supervise employees on constitutional rights in child welfare cases, [e]ncouraging or permitting the fabrication of evidence in child welfare proceedings, [f]ailing to implement adequate safeguards to prevent the unlawful removal of children from their families, [and] [f]ailing to prioritize family placement and maintain familial bonds." *See* Am. Compl. ¶ 53.

First, without alleging further specifics, "encouraging or permitting the fabrication of evidence in child welfare proceedings" does not constitute an actionable "policy or custom" for purposes of a *Monell* claim.  Plaintiff fails to identify any decision-maker responsible for promulgating an official policy which encourages or permits the fabrication of evidence in child

welfare proceedings.  Similarly, although Plaintiff alleges that "[a]ll defendants consistently failed to consider me as a placement option for my niece, N.J.," and that "this decision was made at levels above the caseworker, indicating a policy or custom of disregarding family placement options," *see id.* ¶ 17, Plaintiff merely identifies Defendants Figueroa and Ali as being "directly involved in these high-level decisions"—not that Figueroa and Ali were decision-makers "possess[ing] final authority to establish municipal policy" on the conduct at issue.

Further, Plaintiff's Amended Complaint contains contradictory allegations regarding existing policies and procedures promulgated by the City of Philadelphia.  For example, Plaintiff's reference to the "departmental guidance…emphasiz[ing] the importance of keeping siblings together in placements" recognizes that the City of Philadelphia does, in fact, maintain proper policies regarding the placement of siblings.  *Id.* ¶ 37.  Plaintiff's allegation that "the consistent failure to follow this guidance in my case demonstrates a custom or policy of disregarding official procedures when it comes to family reunification and placement" does not suffice to allege a custom, as the alleged failure to follow such guidance in her case alone does not indicate a practice "so well-settled and permanent as virtually to constitute law."  *Id.* ¶ 58; *Estate of Roman*, 914 F.3d at 798.  As a result, Plaintiff fails to plead a policy, practice, or custom violative of her constitutional rights.

To be sure, a plaintiff may also successfully plead municipal liability under *Monell* by "alleging [a] failure-to-supervise, train, or discipline," and alleging facts showing "that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a

difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

For a plaintiff to properly plead that a failure to supervise, train, or discipline rises to the level of "deliberate indifference to the constitutional rights of those affected," *see Forrest*, 930 F.3d at 106, the plaintiff need identify "a pattern of similar constitutional violations by untrained employees," *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick*, 563 U.S. at 62), that "puts municipal decisionmakers on notice that a new program is necessary." *Id.* "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely…result in the violation of constitutional rights—i.e., to show that the need for more or different training [was] so obvious." *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) (internal quotation marks omitted)).

Plaintiff appears to allege a "pattern-of-violation" theory in her Amended Complaint. To adequately allege a pattern-of-violation, plaintiff need show that decision-makers have "knowledge of a prior pattern of similar incidents," and that "circumstances [exist] under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." *Montgomery* v. *De Simone*, 159 F.3d 120, 127 (3d Cir. 1998). Plaintiff has failed to allege that the City of Philadelphia's employees have engaged in a pattern of constitutionally violative conduct. Indeed, the Amended Complaint fails to reference any other occasion where a City of Philadelphia employee violated a potential foster parent's "constitutional rights in child welfare cases," unlawfully removed children from their families, or did not prioritize "family placement and maintain familial bonds." *See* Am. Compl. ¶ 53. Instead, Plaintiff pleads that the City of Philadelphia's "deliberate indifference to the rights of persons with whom these employees come into contact" is evidenced "by the repeated violations over several years" as to

her *own* foster application and process. *Id.* ¶ 53.[6]  Plaintiff has therefore failed to properly plead a failure to supervise or train.

Plaintiff's *Monell* claim is further bogged down by her contradictory allegations.  Plaintiff alleges that "[t]raining records and policies from the City of Philadelphia…are expected to show that all Defendants **received comprehensive training** on proper procedures for child placement, family reunification, and constitutional rights in child welfare cases."  Am. Compl. ¶ 57 (emphasis added).  Plaintiff therefore admits that the City of Philadelphia had in place comprehensive, proper procedures on the issues that she also alleges the City of Philadelphia "[f]ail[ed] to properly train and supervise employees on."[7]  In any event, Plaintiff's allegation that Defendants' failure "to follow these procedures in [her] case" evidenced "a deliberate policy or custom of disregarding family rights and proper protocols," is both conclusory and runs afoul of *Monell*'s general

---

[6] For avoidance of doubt, a plaintiff may also proceed under a "single-violation" failure to train theory (though Plaintiff does not appear to do so here).  Pleading "that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct will not suffice."  *Connick*, 563 U.S. at 68 (internal quotation marks omitted).  The plaintiff must instead demonstrate that the municipal employer's need to provide specific training to prevent constitutional injury was either "highly predictable" or "patently obvious."  *Id.* at 64.  While there are likely myriad occasions for Department of Human Services employees to encounter constitutional questions in child welfare proceedings, situations involving the removal of children from their families, and the need for prioritization of family placement in their work, Plaintiff herself admits that "Defendants **received comprehensive training** on proper procedures for child placement, family reunification, and constitutional rights in child welfare cases."  *See* Am. Compl. ¶ 57 (emphasis added).  As a result, Plaintiff's *Monell* claim against the City of Philadelphia would fail under a single violation theory as well.

[7] While Federal Rule of Civil Procedure 8(d) allows a party to plead "contradictory statements of fact…when the pleader is legitimately in doubt about the facts in question," *Indianapolis Life Ins. Co. v. Hentz*, No. CIV A 1:06CV2152, 2009 WL 36454, at *4 (M.D. Pa. Jan. 6, 2009), Plaintiff herself states that the training materials underlying the "comprehensive training on proper procedures for child placement, family reunification, and constitutional rights in child welfare cases" **will be** "produced as Exhibit AA upon receipt."  Am. Compl. ¶ 57.  This allegation cannot properly be construed as Plaintiff being "legitimately in doubt" as to the existence of proper procedures and comprehensive training.

purpose—to hold municipal entities liable for pervasive practices and customs violating constitutional rights.

Plaintiff fails to allege the existence of a policy or procedure promulgated by the City of Philadelphia violative of her constitutional rights, the existence of a municipal decisionmaker with final decision-making authority, or an actual failure to supervise or train. As a result, Plaintiff's § 1983 and *Monell* claims against the City of Philadelphia are dismissed.

### 2.    Defendants Figueroa, Ali, and Crawford

Defendants Figueroa, Ali, and Crawford, employees of the City of Philadelphia's Department of Human Services (the "Employee Defendants"), are each alleged to have violated Plaintiff's constitutional rights under § 1983.[8]  The Court finds that the Employee Defendants possess absolute immunity from claims under § 1983 as child welfare workers engaged in advocacy on behalf of the state, and these claims are accordingly dismissed.

The Employee Defendants summarily point to *Ernst v. Child and Youth Services of Chester County*, 108 F.3d 486 (3d Cir. 1997), in which the Third Circuit held that "child welfare workers and attorneys who prosecute dependency proceedings on behalf of the state are entitled to absolute immunity from suit for all of their actions in preparing for and prosecuting such dependency proceedings." *Id.* at 488–89; *see also Hughes v. Long*, 242 F.3d 121, 125 (3d Cir. 2001) ("[C]hild welfare workers are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings."). However, the Third Circuit was hesitant to apply absolute immunity to situations where child welfare workers act only in an

---

[8] An independent *Monell* claim cannot be pursued against the Employee Defendants, as *Monell* is the avenue for *municipal* liability under § 1983. *See Reilly v. City of Harrisburg*, No. 22-1795, 2023 WL 4418231, at *2 (3d Cir. July 10, 2023), *cert. denied sub nom. Reilly v. City of Harrisburg, Pennsylvania*, 144 S. Ct. 1002 (2024) ("The lesson of *Monell* and cases applying it is that **a city** must have been truly involved in a constitutional violation before it is liable." (emphasis added)).

"investigative or administrative" capacity "outside the context of a judicial proceeding." *Ernst*, 108 F.3d at 497 n.7. The Third Circuit later clarified that immunity may extend to investigative actions undertaken during an ongoing judicial proceeding when the child welfare worker is acting as an advocate for the state in a "fundamentally prosecutorial" capacity. *B.S. v. Somerset Cnty.*, 704 F.3d 250, 269–70 (3d Cir. 2013). "The key to the absolute immunity determination is . . . the underlying function that the investigation serves and the role the caseworker occupies in carrying it out." *Id.* at 270.

Actions taken following the commencement of dependency proceedings may also qualify for absolute immunity. *See generally Sporish v. Cnty. of Delaware, Pa.*, No. 12-6363, 2013 WL 5272832, at *8 (E.D. Pa. Sept. 18, 2013) (holding that employees were entitled to absolute immunity for conduct occurring "within the context of a judicial proceeding, namely, [a] dependency determination"); *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *8 (E.D. Pa. Dec. 8, 2020) (holding that caseworkers were entitled to absolute immunity from claims alleging the presentation of false information in the custody petition or hearing); *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, No. 15-6186, 2016 WL 2897470, at *4–5 (E.D. Pa. May 17, 2016) (holding that caseworkers were entitled to absolute immunity on claims of making false statements to the court and failing to follow proper policies and procedures in removing the child in question from plaintiff's custody because alleged conduct "was related to initiating, preparing for, and prosecuting the dependency proceedings").

Plaintiff alleges that, following the commencement of family court proceedings in 2016, the Employee Defendants each violated Plaintiff's constitutional rights by perpetuating false statements regarding Plaintiff's prior mistreatment of her nephew, and failing to place N.J. in Plaintiff's care. *See* Am. Compl. ¶¶ 30–38, 43–47. As to Defendants Figueroa and Ali, Plaintiff

alleges that "[i]n May 2018, during an executive team meeting involving City of Philadelphia Supervisors, including Defendants Cynthia Figueroa and Kimberly Ali, false information was shared that I had kicked out my nephew." *Id.* ¶15(c). Here, Plaintiff cites to an attached exhibit (Ex. F), in which a non-party speaker appears to reference this meeting but does not mention Ali or Figueroa by name. *See* Am. Compl. Ex. F.[9] Further, Figueroa and Ali are alleged to have been "directly involved in [] high-level decisions" to disregard Plaintiff "as a placement option for [her] niece, N.J., despite [Plaintiff's] status as a licensed foster parent and [her] successful care of other non-family placements." *Id.* at ¶ 17.

During the period that Plaintiff alleges, it appears from the face of the Amended Complaint and the cited exhibits that dependency proceedings were active and ongoing in the case. Additionally, Plaintiff herself alleges that Defendants Figueroa and Ali were engaged in the process of determining her niece's placement and made direct decisions regarding the placement. Based on these allegations, Figueroa and Ali were acting as advocates for N.J., and therefore are entitled to absolute immunity from Plaintiff's § 1983 claims.

Defendant Crawford's entitlement to absolute immunity from Plaintiff's § 1983 claims is similarly straightforward. Plaintiff alleges that "[o]n May 27, 2016, during a court hearing at the Philadelphia Family Court, Defendant Sannah Crawford presented information leading to the removal of my niece, N.J., without providing me an opportunity to present contrary evidence." *Id.* ¶ 44(b). Further, Plaintiff alleges that "[o]n April 15, 2016, Defendant Sannah Crawford negligently identified Ceolia Warren Bentley as a biological relative in official documents, despite

---

[9] "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

evidence to the contrary. (Exhibit B)." *Id.* ¶ 64(c); *see also id.* ¶ 72(a).  Each allegation pertaining to Defendant Crawford describes statements made at a "court hearing" and in "official documents" relating to the ongoing dependency proceedings.  Accordingly, Defendant Crawford is entitled to absolute immunity, and Plaintiff's § 1983 claims against her are dismissed.

### 3.    Defendant Blumenstein

Defendant Blumenstein argues that she is employed by the Defender Association of Philadelphia, a non-government entity, and therefore a § 1983 claim against her cannot proceed. The Court agrees, and the § 1983 claims against her are dismissed accordingly.

Public defenders are not considered state actors for purposes of establishing liability under § 1983 when performing traditional legal functions.  *Cf. Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant.").  This Circuit has previously found that attorneys, including those employed by the Defender Association of Philadelphia, are "officers of the court" and "not subject to § 1983 claims." *Rushing v. Pennsylvania*, 637 F. App'x. 55, 57 (3d Cir. 2016) (unpublished).

Here, all allegations against Blumenstein relate to Blumenstein's performance of traditional legal services as a "Court-Appointed Child Advocate Attorney."  Am. Compl. ¶ 11. Specifically, Plaintiff's averments regarding Blumenstein involve her conduct in and surrounding the dependency proceedings involving Plaintiff's niece.  *See, e.g.*, Compl. ¶¶ 72(b), 75(b.) Accordingly, the § 1983 claims against Defendant Blumenstein must be dismissed, as Ms. Blumenstein is not a person "acting under color of law" in her employment with the Defender Association of Philadelphia.

### B.  Conspiracy Under 42 U.S.C. § 1985 (Claim 4)

Plaintiff's conspiracy claim under 42 U.S.C. § 1985 is improper here, as Plaintiff does not allege race or class-based discriminatory animus. Plaintiff alleges that "[a]ll Defendants conspired to deprive me of my constitutional rights, including my right to familial association and due process," citing 42 U.S.C. 1985, which, at base, proscribes conspiracies to interfere with civil rights. Am. Compl. ¶ 49. The first two sections of § 1985 relate to "preventing officer[s] from performing duties" and "obstructing justice; intimidating part[ies], witness[es], or juror[s]" and appear to be inapplicable to Plaintiff's claims from the face of the Amended Complaint. 42 U.S.C. § 1985. Therefore, the Court construes Plaintiff's § 1985 claim as a claim under § 1985(3), which addresses "depriving persons of rights or privileges" and "permits an action to be brought by one injured by a conspiracy formed for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." *Davis v. Samuels*, 962 F.3d 105, 113 (3d Cir. 2020); 42 U.S.C. § 1985.

To plausibly bring a claim under § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). "[B]ecause § 1985(3) requires the intent to deprive of equal protection, or equal privileges and immunities, a claimant must allege some racial, or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action in order to state a claim." *Id.* at 135 (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) (internal quotations omitted) (emphasis omitted).

Plaintiff's conspiracy claim is dismissed as to all Moving Defendants. Plaintiff has not pled any racial or class-based animus in support of her § 1985 claim. Indeed, Plaintiff has pled only that a team meeting took place in May 2018 at the Philadelphia Department of Human Services Office, and that non-moving Defendants "consistently shared and acted upon false information about [her] care for [her] nephew and niece." Am. Compl. ¶ 49(b). Without any allegation of racial or class-based animus, Plaintiff's conspiracy claim cannot proceed and, accordingly, is dismissed.

### C. State Tort Law Claims (Claims 6–10)

Plaintiff further alleges state law tort claims against the Moving Defendants for invasion of privacy,[10] negligence and negligent infliction of emotional distress, defamation, fraud, and abuse of process. *See* Am. Compl. ¶¶ 59–76. These claims are dismissed as to the Moving Defendants.

### 1. Defendants City of Philadelphia, Figueroa, Ali, and Crawford

Defendants the City of Philadelphia, Figueroa, Ali, and Crawford are immune from liability on Plaintiff's state law negligence and negligent infliction of emotional distress claims under The Pennsylvania Political Subdivision Tort Claims Act (the "Tort Claims Act"). Under 42 Pa. Stat. and Cons. Stat. Ann. § 8541, "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."

There are nine enumerated exceptions to the general liability bar of the Tort Claims Act. A local agency or employee may still be held liable for damages if an injury results from: (1)

---

[10] As to Plaintiff's Invasion of Privacy claim, Defendant Blumenstein is the only Moving Defendant whose actions are alleged to provide a basis for the claim. *See* Am. Compl. ¶ 60.

vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse. *See* 42 Pa. Stat. and Cons. Stat. Ann. § 8542. Liability may be imposed if the local agency or its employees acted negligently in causing an injury related to the above. *See id.*

Otherwise, "[t]he [Tort Claims Act] provides immunity to municipalities and its employees for official actions unless the employee's conduct goes beyond negligence and constitutes a crime, actual fraud, actual malice, or willful misconduct." *Vargas v. City of Philadelphia*, 783 F.3d 962, 975 (3d Cir. 2015) (internal quotation marks omitted); 42 Pa. Stat. and Cons. Stat. Ann. § 8550. "Willful misconduct has been defined by the Pennsylvania Supreme Court as conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." *Vargas,* 783 F.3d at 975 (internal quotation marks omitted).

Because the allegations underscoring Plaintiff's negligence claim (Claim 7) as to the City of Philadelphia and Employee Defendants—namely, that "Defendant Sannah Crawford negligently identified Ceolia Warren Bentley as a biological relative in official documents, despite evidence to the contrary," Am. Compl. ¶ 66(c)—do not fall into any of the above categories, Plaintiff's claim against these Defendants is barred under the Tort Claims Act.

Defamation, fraud, and abuse of process, on the other hand, are considered "intentional torts." *See Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) (defamation); *McElwee Group, LLC v. Mun. Auth. of Borough of Elverson*, 476 F. Supp. 2d 472, 476 (E.D. Pa. 2007) (fraud); *Vizant Techs., LLC v. Whitchurch*, 97 F. Supp. 3d 618, 635 (E.D. Pa. 2015) (abuse of process). "[I]ntentional torts . . . constitute willful misconduct or actual malice within the meaning of §

8542(a)(2)" of the Tort Claims Act and are therefore not covered under the Act. *Gonzalez v. City of Bethlehem*, No. CIV. A. 93-1445, 1993 WL 276977, at *4 (E.D. Pa. July 13, 1993). However, Plaintiff fails to sufficiently plead a cause of action against the City of Philadelphia and the Employee Defendants with respect to these claims.

*First*, in support of her Defamation claim (Claim 8), Plaintiff alleges that "Defendants allowed [her] to care for non-relative foster children, demonstrating the falsity of their claims about [her] unsuitability as a caregiver." Am. Compl. ¶ 68(c). "A claim for defamation [] under Pennsylvania law includes the following elements: (1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff." *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014). "A statement is deemed to be defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession." *Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 477 (E.D. Pa. 2010) (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (2008) (internal quotation marks omitted)). Here, Plaintiff pleads in conclusory fashion that the alleged defamatory statements damaged her reputation and caused her "significant harm" in her "professional and personal life." Am. Compl. ¶ 69. Without more, the Court cannot "draw the reasonable inference that the" alleged defamatory statements caused such harm, and, therefore, that the Employee Defendants may be "liable for the misconduct alleged." *See Iqbal,* 556 U.S. at 663. As a result, Plaintiff's Defamation claim against the City of Philadelphia, Ali, Figueroa, and Crawford is dismissed.

*Second*, in support of her Fraud claim (Claim 9), Plaintiff alleges that "[f]rom April 15, 2016, onwards, Defendants Nikkia Plunkett and Sannah Crawford fraudulently represented Ceolia

19

Warren Bentley as a biological relative to justify her placement as a foster parent for [Plaintiff's] niece." Am. Compl. ¶ 72(a). The elements required to establish a fraud claim under Pennsylvania law are as follows: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Heaven v. Portfolio Recovery Associates, LLC*, 303 F. Supp. 3d 333, 340 (E.D. Pa. 2018). Importantly, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Here, Plaintiff fails to allege particularized information regarding the individual(s) defrauded, nor that there was any reliance on the alleged fraudulent statements. In addition, Plaintiff does not allege any fraudulent statement attributable to the City of Philadelphia through the Employee Defendants or to Defendants Figueroa and Ali individually. As a result, Plaintiff fails to state a claim for fraud with "substantiation" as to not only Defendant Crawford, but the City of Philadelphia, Ali, and Figueroa as well.

***Third***, in support of her Abuse of Process claim (Claim 10), Plaintiff alleges only that "Defendant City of Philadelphia, through its Department of Human Services, filed a motion to dismiss my adoption petition for my niece, N.J., based on false and misleading information provided by other Defendants. This action was taken to prevent me from exercising my rights as a family member, rather than to serve the best interests of the child." Am. Compl. ¶ 75(a). "[T]o

establish a claim for abuse of process under the law of Pennsylvania, it must be shown that the defendant (1) used a legal process against the plaintiff; (2) primarily to accomplish a purpose for which the process was not designed, and (3) that harm was caused to the plaintiff as a result." *Keim v. Cnty. of Bucks*, 275 F. Supp. 2d 628, 635 (E.D. Pa. 2003). "Furthermore . . . the [plaintiff] must show some definite act or threat not authorized by the process . . . there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Greiser v. Drinkard*, 516 F. Supp. 3d 430, 441 (E.D. Pa. 2021). Here, Plaintiff's conclusory allegation that the City of Philadelphia, through its Department of Human Services, engaged in motion practice does not suffice to show that the City of Philadelphia engaged in "some definite act or threat" intended "to misuse child-custody proceedings for an illegitimate purpose." *Id.*; *cf. Wolf v. New Jersey*, No. 23-1635, 2024 WL 5154023, at *2 (3d Cir. Dec. 18, 2024) (evaluating abuse of process under New Jersey state law). Because Plaintiff fails to state an abuse of process claim against the City of Philadelphia, and alleges no facts as to an individual abuse of process claim against the Employee Defendants, the abuse of process claim is dismissed as to these Defendants.

### 2. Defendant Blumenstein

#### a. Invasion of Privacy, Defamation, and Fraud (Claims 6, 8–9)

Defendant Blumenstein is protected under Pennsylvania's "judicial privilege" for the statements underlying Plaintiff's Invasion of Privacy, Defamation, and Fraud claims (Claims 6, 8–9). These claims are therefore dismissed.

Plaintiff's Invasion of Privacy, Defamation, and Fraud claims against Blumenstein each stem from Blumenstein's allegedly false statements—made during court proceedings—regarding Plaintiff's familial relationships and ability to care for her niece and nephew. *See* Am. Compl. ¶¶ 40, 60(b), 72(b). Defendant Blumenstein argues in her motion to dismiss that, as an attorney, any

communications made relating to the dependency proceedings are afforded absolute privilege. *See* ECF No. 35 at 6–9. The Court agrees.

The "judicial privilege" under Pennsylvania law provides "immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought, whether made by a party, a witness, an attorney, or a judge." *Church Mut. Ins. Co. v. All. Adjustment Group*, 102 F. Supp. 3d 719, 730 (E.D. Pa. 2015), *aff'd*, 708 F. App'x. 64 (3d Cir. 2017) (unpublished) (internal quotation marks omitted). Here, Defendant Blumenstein's alleged false statements were made during the dependency proceedings and were made on subject matter relevant to the proceedings, namely, Plaintiff's relationship with, and ability to care for, her niece and nephew. As a result, Plaintiff's Invasion of Privacy, Defamation, and Fraud claims are dismissed as to Defendant Blumenstein.

### b. Negligence and Negligent Infliction of Emotional Distress (Claim 7)

Plaintiff brings a negligence claim and negligent infliction of emotional distress claim (Claim 7) against Defendant Blumenstein for "fail[ing] to consider [her] as a placement option for [her] niece, N.J., despite [her] qualifications as a licensed foster parent." Am. Compl. ¶ 64(b). All negligence-related claims are dismissed as to Defendant Blumenstein.

"A claim for negligence under Pennsylvania law contains four elements: (1) a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another." *N.W. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005).

Plaintiff alleges that "[a]ll Defendants owed me a duty of care in their roles as child welfare professionals and government employees." Am. Compl. ¶ 63. However, and "[a]lthough a public defender is an employee of the government, his or her primary responsibility is to represent individual citizens in controversy with the State." *Brown v. Tucci*, 960 F. Supp. 2d 544, 381 (W.D. Pa. 2013). As a result, appointed counsel's "duty is not to the public at large, except in that general way, [but] to serve the undivided interests of his client." *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979). Plaintiff's Amended Complaint does not allege any duty—statutory, contractual, or otherwise—that Defendant Blumenstein owed to her specifically. Accordingly, Plaintiff fails to state a claim of negligence against Blumenstein, and the claim is dismissed.

Second, under Pennsylvania law, a plaintiff may only prevail on a negligent infliction of emotional distress claim if she plausibly pleads any of the following: "(1) the defendant had a contractual or fiduciary duty toward the plaintiff; (2) the plaintiff was subjected to a physical impact; (3) the plaintiff was in a zone of danger and reasonably feared impending physical injury; or (4) the plaintiff observed a tortious injury to a close relative." *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 346 (E.D. Pa. 2022). Here, the Complaint is devoid of any allegations supporting a negligent infliction of emotional distress claim. Accordingly, this claim is dismissed.

### c.  Abuse of Process (Claim 10)

Finally, Plaintiff's Abuse of Process claim (Claim 10) is dismissed as to Defendant Blumenstein, as Plaintiff has not adequately pled that Blumenstein pursued litigation against Plaintiff primarily for an unauthorized purpose.

Plaintiff alleges summarily that "Emily Blumenstein repeatedly used court processes to prevent me from gaining custody or visitation rights with my niece and nephew, based on false information and in violation of family placement preferences under applicable laws." Am. Compl. 75(b). As stated above, to successfully plead a claim of abuse of process, the plaintiff must show

that the defendant engaged in a legal process against plaintiff "**primarily** to accomplish a purpose for which the process was not designed." *Keim*, 275 F. Supp. 2d at 635 (emphasis added). Even taking as true Plaintiff's allegation that Blumenstein "repeatedly used court processes to prevent [Plaintiff] from gaining custody or visitation rights with [her] niece and nephew," Plaintiff has not adequately pled that this alleged purpose was the *primary* reason for Blumenstein's engagement in dependency proceedings. Therefore, the abuse of process claim is dismissed.

### D. Ceolia Warren Bentley

Although not a Moving Defendant, Plaintiff names Defendant Ceolia Warren Bentley in this action and alleges constitutional, conspiracy, and state law tort claims against her in the Amended Complaint. For the reasons that follow, the Court will dismiss all claims against Ceolia Warren Bentley.

### 1.    42 U.S.C. § 1983 and *Monell* (Claims 1-3, 5)

Ceolia Warren Bentley is not an individual acting under color of state law and, therefore, cannot be held liable under § 1983 or *Monell*. As discussed above, "[a]ction under color of state law requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey*, 635 F.3d at 609. A private actor may be considered a state actor under only limited circumstances, specifically, where "(1) the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) the private party has acted with the help of or in concert with state officials; and (3) the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (cleaned up). "The inquiry is fact-specific," *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995), and "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly

private behavior may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Assoc.*, 531 U.S. 288, 295 (2001) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974)).  "In other words, the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Keeping in mind the above, the Third Circuit in *Leshko v. Servis* held that "foster parents in Pennsylvania are not state actors for purposes of liability under § 1983." *Leshko v. Servis*, 423 F.3d 337, 347 (3d Cir. 2005).  Here, Plaintiff alleges that "Ceolia Warren Bentley was a foster parent and respite provider acting on behalf of the City of Philadelphia and/or Turning Points." Am. Compl. ¶ 10.  Plaintiff does not plead facts to otherwise demonstrate that Defendant Bentley's "behavior may be fairly treated as that of the State itself."  Indeed, Plaintiff entirely fails to allege how Defendant Bentley deprived her of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  Accordingly, the § 1983 and *Monell* claims against Defendant Bentley are dismissed.

### 2.    Conspiracy under 42 U.S.C. § 1985 (Claim 4)

Plaintiff has similarly failed to state a claim against Defendant Bentley for Conspiracy under 42 U.S.C. § 1985.  As explained in section III.B, *supra*, to plausibly state a claim under § 1985(3), "a claimant must allege some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Farber*, 440 F.3d at 134.  Plaintiff does not allege that Defendant Bentley conspired with any of her co-Defendants, nor that her actions were driven by racial or class-based animus.  Therefore, the § 1985 claim against Defendant Bentley is dismissed.

### 3. State Tort Law Claims (Claims 6–10)

The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Bentley and, as a result, Claims 6–10 against Bentley are dismissed. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *See also Carlsbad Tech., Inc.* v. *HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). The Court has already dismissed the set of § 1983 claims (including the *Monell* claim) and § 1985 claim against Defendant Bentley, therefore, the Court need not exercise its jurisdiction to evaluate the state tort law claims. Plaintiff is free to bring these claims against Defendant Bentley in Pennsylvania state court if she so chooses. Accordingly, Plaintiff's state tort law claims against Defendant Bentley are dismissed.

### E. Defender Association of Philadelphia

Like Defendant Bentley, the Defender Association of Philadelphia has not moved to dismiss the claims against it. However, the Amended Complaint is largely devoid of reference to the Defender Association outside of the allegations supporting Plaintiff's *Monell* claim. For the following reasons, the Amended Complaint against the Defender Association is dismissed.

### 1. 42 U.S.C. § 1983 and *Monell* (Claims 1-3, 5)

Incorporating the legal framework stated above as to the City of Philadelphia, *see supra* section III.A.1, the Defender Association of Philadelphia does not act under color of state law for purposes of § 1983 and, therefore, cannot be held liable under § 1983 or *Monell*. Here, Plaintiff alleges that "[t]he Defenders [sic] Association of Philadelphia, in its official capacity, failed to properly supervise and train Emily Blumenstein, leading to the violation of my rights and those of N.J." *See* Am. Compl. ¶ 28. However, it is well settled in the Third Circuit that the Defender

Association is not a state actor for purposes of § 1983. *See Dorn v. Aguilar*, 645 F. App'x 114, 115 (3d Cir. 2016) (per curiam) ("As explained by the District Court, Dorn did not state a claim for relief against his public defender and the public defender's office because neither is a state actor for purposes of § 1983."); *Williams v. Def. Assn. of Phila.*, No. 22-CV-4576, 2023 WL 125241, at *3 (E.D. Pa. Jan. 6, 2023) (citing cases). Therefore, the § 1983 and *Monell* claims against Defendant Defender Association are dismissed.

### 2.    Conspiracy under 42 U.S.C. § 1985 (Claim 4)

Plaintiff's Conspiracy claim under 42 U.S.C. § 1985 is dismissed. Incorporating the discussion above in section III.B, *supra*, not only does Plaintiff fail to allege that the Defender Association acted with racial or class-based animus, but the Amended Complaint does not contain *any* facts supporting the allegation that the Defender Association, as part of "All Defendants," *see* Am. Compl. ¶ 49, conspired to deprive Plaintiff of her constitutional rights. Accordingly, the § 1985 claim against the Defender Association is dismissed.

### 3.    State Tort Law Claims (Claims 6-10)

As to Plaintiff's state tort law claims, the Court will decline to exercise supplemental jurisdiction over such claims, given that the claims over which the Court had original jurisdiction are now dismissed. *See* 28 U.S.C. § 1367(c)(3). Should Plaintiff choose to pursue tort claims against the Defender Association of Philadelphia, she is entitled to do so in Pennsylvania state court. The claims against Defendant Defender Association of Philadelphia are therefore dismissed.

### F.  Dismissal with Prejudice

The Court may dismiss a complaint with prejudice when granting leave to amend would be "futile" or "inequitable." *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). "The decision to dismiss a complaint [] with prejudice[] is within the district court's discretion."

*See Beale v. Experian Info. Sols., Inc.*, No. CV 22-4810, 2023 WL 8936342, at *1 (E.D. Pa. Dec. 27, 2023) (citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984)).  Here, the Court will exercise its discretion to dismiss the Amended Complaint with prejudice, as any additional amendment would be inequitable to the Moving Defendants, Ceolia Warren Bentley, and the Defender Association of Philadelphia.

Permitting further amendment would be inequitable to the Moving Defendants, Ceolia Warren Bentley, and the Defender Association of Philadelphia, as Plaintiff has already had multiple opportunities to state claims against these Defendants.[11]  Plaintiff asserted the exact same causes of action in her original Complaint, ECF No. 1, as in her Amended Complaint.  She was given the opportunity to supplement these claims with additional facts and supporting exhibits in her Amended Complaint.  Yet, despite the variety of claims that Plaintiff has levied against the Moving Defendants, Ceolia Warren Bentley, and the Defender Association; and the addition of facts and exhibits; Plaintiff's Amended Complaint fails to withstand a motion to dismiss.  To give Plaintiff a second opportunity to amend her complaint—and likely re-allege the same claims with additional conclusory allegations—would be inequitable to the Moving Defendants, Ceolia

---

[11] The fact that Plaintiff only named Emily Blumenstein and the Defender Association of Philadelphia as defendants in her *Amended* Complaint and, ostensibly, has not received multiple opportunities to state claims makes no difference here, because permitting amendment would be futile.  First, as a matter of law, Plaintiff has no plausible § 1983 or *Monell* claim as to either Defendant to suffice for original jurisdiction.  Second, in amending her 42 U.S.C. § 1985 claim, Plaintiff specified that the "conspiracy" was evidenced by "[a]n executive team meeting held in May 2018 at the Philadelphia Department of Human Services office" including "Defendants Cynthia Figueroa, Kimberly Ali, and others" and "[a] series of email exchanges and meetings between Defendants Nikkia Plunkett, Kennisha White, Juanita Parks, Jennifer Kaba, and Cydney Dasent."  Am. Compl. ¶¶ 48–50.  Given that Plaintiff had the opportunity in her Amended Complaint to allege facts underlying her Conspiracy claim that related to Defendants Blumenstein and the Defender Association but chose only to identify meetings and communications among *other* Defendants, the Court views amendment of the Conspiracy claim as to Defendants Blumenstein and the Defender Association as futile.

Warren Bentley, and the Defender Association of Philadelphia.  *See Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 654–55 (3d Cir. 1998) (upholding denial of leave to amend because "[p]laintiffs have already had ample opportunity to plead their allegations properly and completely") (*abrogated on other grounds*); *Hobson v. St. Luke's Hosp. & Health Network*, 735 F. Supp. 2d 206, 209 n.3 (E.D. Pa. 2010) (dismissing the plaintiff's amended complaint with prejudice because the plaintiff failed to state a claim in both the original and amended complaints, as "it would be inequitable to subject defendant to further expense of time and effort responding to a third iteration of plaintiff's Complaint").

Plaintiff has engaged in a years-long back-and-forth with Defendants over the placement of her niece and nephew.  If Plaintiff had been able to sufficiently state a claim based on *any* cause of action grounded in the extensive record likely underlying the dependency proceedings, she presumably would have done so in the Amended Complaint.   Thus, Plaintiffs' Amended Complaint is dismissed with prejudice.

### G.  Insufficient Service of Process

For the final point of analysis, the Court shall evaluate Defendant Blumenstein's motion to dismiss for improper service under Rule 12(b)(5).  Defendant Blumenstein alleges that Plaintiff's service of the Amended Complaint on August 1, 2024 was improper because the Proof of Service submitted in the case (ECF No. 31) alleges the summons "was served on an Allied Security person who was allegedly authorized accept service on behalf of Ms. Blumenstein's employer," but does not allege that "Ms. Blumenstein appointed Herbert Adams as her personal agent for service of process."  ECF No. 35 at 11–13.

A party may move to dismiss a complaint for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure.  Under Federal Rule Civil Procedure 4(e)(1) and

(2), an individual may be served either by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or" by personal service, leaving a copy at the "individual's dwelling or usual place of abode" with a resident of suitable age and discretion, or delivering a copy to an agent authorized for service of process.

Under Pennsylvania Rule of Civil Procedure 402(a), service on a defendant can be made by handing a copy: (1) directly to the defendant; (2) to an adult family member or a responsible person at the defendant's residence, should an adult family member not be present; (3) to the clerk or manager of the defendant's lodging (e.g., hotel, inn, apartment, boarding house, or other place of lodging); or (4) to the defendant's agent or the person in charge at the defendant's office or usual place of business.  Pa.R.C.P. No. 402(a)–(b).

Plaintiff alleges that service was proper as to Defendant Blumenstein because Blumenstein was served at her "usual place of business" to "the person for the time being in charge thereof," Herbert Adams, the "designated recipient of service" for the Defender Association of Philadelphia. ECF No. 37 at 8.  Under Third Circuit precedent, "the 'person for the time being in charge' of any office or usual place of business of the defendants for purposes of Pennsylvania Rule of Civil Procedure 402 must either be an individual with some direct connection to the party to be served or one whom the process server determines to be authorized, on the basis of her representation of authority, as evidenced by the affidavit of service." *Grand Ent. Grp., Ltd.* v. *Star Media Sales, Inc.*, 988 F.2d 476, 486 (3d Cir. 1993).  "Service at the defendant's 'office or usual place of business,' however, pertains only to service at a place of business in which the defendant holds a proprietary interest, not at a place where he or she is merely an employee." *Johnson-Lloyd* v.

*Vocational Rehab. Off., Pennsylvania Dept. of Lab. and Indus.*, 813 F. Supp. 1120, 1125 (E.D. Pa. 1993).

Plaintiff has not met her burden to show that service was proper in this case.  *See Grand Ent. Grp., Ltd.*, 988 F.2d at 488 ("[T]he party asserting the validity of service bears the burden of proof on that issue.").  Plaintiff has not shown that Blumenstein holds a proprietary interest in the Defender Association of Philadelphia, nor has she shown that Herbert Adams was Blumenstein's agent for service of process.  Accordingly, service was improper as to Defendant Blumenstein on August 1, 2024.

The Court has determined that Plaintiff's claims in the Amended Complaint will be dismissed with prejudice for failure to state a claim, as any further amendment would be inequitable.  Consequently, because the Amended Complaint is being dismissed on these grounds, the Court finds no good cause to grant Plaintiff additional time to effectuate proper service on Defendant Blumenstein.[12]

## IV.    **CONCLUSION**

For the reasons stated herein, the Court will grant the Motion to Dismiss filed by the City of Philadelphia, Kimberly Ali and Cynthia Figueroa (ECF No. 28), Defendant Sannah Crawford's Motion to Dismiss (ECF No. 34), and Defendant Emily Blumenstein's Motion to Dismiss (ECF

---

[12] Upon review of the docket, Plaintiff appears to have attempted service on Defendant Blumenstein on October 23, 2024.  *See* ECF No. 48.  However, under Rule 4(m), Plaintiff had ninety (90) days to serve Blumenstein from the date of the filing of the Amended Complaint on July 15, 2024, with the deadline being October 14, 2024 (October 13, 2024, the calculated deadline, fell on a Sunday).  *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.").  Therefore, by October 23, 2024, Plaintiff's time for service had expired, and the Court, as stated above, does not find good cause to grant Plaintiff additional time to effectuate proper service.

No. 35).  The Court will further dismiss the Amended Complaint as to Defendants Ceolia Warren

Bentley and the Defender Association of Philadelphia.  An appropriate order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**